**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| STRATEGY AND EXECUTION, INC., | § | |
| a Michigan corporation, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  5:23-cv-135 |
| | § | JURY DEMAND |
| | § | |
| BLACK RIFLE COFFEE COMPANY LLC, | § | |
| a Delaware limited liability company, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## COMPLAINT AND JURY DEMAND

Strategy and Execution, Inc. ("SEI" or "Plaintiff") brings this action for breach and anticipatory breach of contract and declaratory relief against Defendant Black Rifle Coffee Company LLC ("BRCC" or "Defendant").

### Nature of the Case

1.      Plaintiff initiates this lawsuit to resolve current and future disputes with Defendant concerning royalties and other payments due from Defendant to Plaintiff pursuant to a written Consulting Agreement and subsequent express and/or implied contract(s) for payment of agent expenses.

2.      Plaintiff also seeks declaratory judgment that Defendant does not possess intellectual property rights, greater than that or to the exclusion of Plaintiff, in the ingredients, composition and/or formulas for the Ready-to-Drink ("RTD") coffee line of beverages developed through Plaintiff's efforts.

3.      A copy of the parties' written Consulting Agreement is attached as **Exhibit A**.

4.      Pursuant to the Consulting Agreement, Plaintiff was engaged by Defendant in order

expand Defendant's business and operations, and to assist Defendant in the development of a

Ready-to-Drink ("RTD") coffee line of beverages, energy drinks, and energy supplements.

5.      Plaintiff was extremely successful in its efforts on behalf of Defendant, and specifically

with regard to Defendant's current RTD coffee beverages.

6.      The success has resulted in Defendant's RTD coffee line becoming the fastest growing

single serve RTD coffee across all channels of trade, as well as the company successfully taking

its business public through a public offering, and generating hundreds of millions of dollars in

revenues.

7.      However, that success has also resulted in Defendant having to pay significant royalties

to Plaintiff per the terms of the Consulting Agreement, in addition to the agreed upon monthly

consulting fees, commissions, and expenses.

8.      In simple terms, Plaintiff has become a victim of its own success.  Once Plaintiff's

royalties, for example, became a multi-million-dollar financial obligation for Defendant,

Defendant began taking steps to distance itself from Plaintiff and its financial obligations under

the parties' Consulting Agreement.

9.      Initially Defendant notified Plaintiff of their intent not to renew the Consulting

Agreement beyond the initial term, well over a year in advance of the deadline to do so.

10.      Thereafter Defendant began suggesting that it would not be paying any royalties to

Plaintiff following the expiration of the initial term of the Consulting Agreement, *i.e.* post-

termination royalties, despite language in the Consulting Agreement requiring them to be paid.

11.     From there matters only got worse, with Defendant outright stating it would not honor the terms of the parties' Consulting Agreement, and specifically royalty payments presently due and owing, and actually or potentially owing in the future; that it would no longer pay expenses it had agreed to; and that it would not reimburse Plaintiff for the financial overhead created for Plaintiff by the additional personnel added to Plaintiff's operation at the request and for the benefit of Defendant.

12.     Notably, Defendant has not sought to terminate the Consulting Agreement for cause, and has never claimed in any writing to Plaintiff that they have "cause" to terminate the Consulting Agreement, as that term is used and defined in § 7(A) therein.

13.     Nevertheless, Defendant's aforementioned disregard of their contractual obligations to Plaintiff have already caused significant financial harm to Plaintiff, including but not limited to Defendant's failure to pay hundreds of thousands of dollars in past due royalties and expenses – a number which continues to grow.

## The Parties

14.     Plaintiff Strategy and Execution, Inc. is a Michigan corporation, organized under the laws of the State of Michigan, with its headquarters and principal place of business located in Dayton, Ohio.

15.     Plaintiff is a consumer product goods consultant specializing in all aspects of bringing consumer products to market and retail, with an emphasis on the consumer beverage and energy drink industry.

16.     Plaintiff's CEO is Bryon Evans and its President of Sales is Pete Popovich.

17.     Both Evans and Popovich are experts in developing beverage products and energy drinks and supplements, through to manufacture, sale, distribution, and account management.

18.     Evans and Popovich have decades of experience in the consumer beverage and energy drink/supplement industry.

19.     Defendant Black Rifle Coffee Company LLC is a Delaware limited liability company, organized under the laws of the State of Delaware.

20.     Upon information and belief, BRCC was headquartered in San Antonio, Texas, including at the time of execution of the Consulting Agreement.

21.     In early 2022 BRCC's parent company, Authentic Brands LLC completed a "deSPAC" transaction in order to go public with BRCC.

22.     The transaction resulted in the entity BRC Inc. (NYSE: BRCC) going public.

23.     According to BRC Inc.'s (NYSE: BRCC) Form 10-K ("SEC 10-K") for the fiscal year ending December 31, 2021 as filed with the Security and Exchange Commission, Defendant Black Rifle Coffee Company LLC is the subsidiary by which the public company conducts substantially all of its business, including RTD coffee sales.

**Jurisdiction and Venue**

24.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the adverse parties and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

25.     Plaintiff's claims in this action include, but are not necessarily limited to, hundreds of thousands of dollars in currently unpaid, past-due royalties, tens of millions of dollars in future royalties, and other amounts owed to it under the Consulting Agreement.

26.     Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claims occurred here, and the Consulting Agreement provides for

venue in the state or federal courts located in Texas.  *See* Consulting Agreement, **Exhibit A**, § 13(B).

**Factual Background**

27.     Plaintiff repeats and re-alleges the above paragraphs as if fully incorporated herein.

28.     The parties originally met through Pete Popovich back in 2019.

29.     In early 2019 Popovich was providing consulting to Defendant concerning the potential development of an RTD coffee line.

30.     After some preliminary discussions and consulting, Bryon Evans and his company Bache Business Ventures, LLC (later transitioned to Plaintiff/SEI) were introduced to Defendant in late spring/early summer of 2019.

31.     At the time of Evans' introduction to Defendant, Evans had already successfully developed, had manufactured, and brought to market other RTD coffee beverages for major retailers and convenience stores across the United States.

32.     Evans was able to accomplish this through a strategic alliance with Thomas Morley and his company, The Functional Foods Company, Inc., headquartered in Michigan.

33.     Together Evans and Morley achieved RTD coffee success through the development of a relationship with the most viable RTD coffee manufacturer in the United States at the time, O-AT-KA Milk Products located in New York.

34.     O-AT-KA Milk Products and Dairy Farmers of America are the largest manufacturers of RTD coffee beverages in the United States.

35.     Early in the relationship between Plaintiff and Defendant, SEI, through Evans, obtained initial samples of RTD coffee for Defendant through O-AT-KA.

36.     Over the course of weeks and months, the ingredients, composition and formula for what became BRCC's RTD coffee line were refined by Evans/SEI, Morley, and O-AT-KA.

37.     As an aside, yet important to the present action, Defendant has never sought nor proposed any agreement with Plaintiff or Evans concerning any intellectual property rights surrounding the ingredients, composition, or formula for the RTD coffee.

38.     Following negotiations and the execution of a written Memo of Understanding, the parties eventually executed the Consulting Agreement.  **Exhibit A**.

39.     The Consulting Agreement has an initial term of forty-eight (48) months, beginning January 1, 2020.  *Id*. at § 2(A).

40.     In consideration of Plaintiff's services, and in addition to the payment of a $30,000 monthly consulting fee, Defendant also agreed to pay Plaintiff a $.02 per unit royalty on certain units of product, including RTD beverages, energy drinks, or energy supplements, according to the terms of the Consulting Agreement.  *See* Consulting Agreement, **Exhibit A**, § 3(A) and (B).

41.     Further, and to the extent Plaintiff procured the sale of any other existing products of Defendant aside from RTD beverages, energy drinks, or energy supplements, *e.g.* coffee pods, whole bean coffee, coffee blends, merchandise, etc., Defendant was required to pay Plaintiff a commission of 3% of the products sold.  *Id.* at § 3(D).

42.     Although initially the parties' Consulting Agreement called for payment of a set, monthly expense fee of $3,500, the parties left open the possibility of payment of increased expenses by mutual agreement.  *See* Consulting Agreement, **Exhibit A**, § 2(F).

43.     Indeed, later in the parties' relationship, and as demand for Defendant's RTD coffee beverages increased, Plaintiff proposed the expansion of outside sales personnel and management under SEI's control.

44.     In essence, the parties agreed to expand the "headcount" of SEI's outside agents working with buyers and distributors across the country ("Sales Agents"), in an effort to increase Defendant's sales and distribution network.

45.     As part of the discussions and negotiations pertaining to increasing the number of Sales Agents working for Defendant, Plaintiff, and specifically Evans, made clear to Defendant that each individual agent would require a financial commitment of at least 24 months on Defendant's behalf.

46.     Defendant agreed to the increase in Sales Agents and agreed to be financially responsible for a portion of the cost for at least the committed time-period of 24 months.

47.     As a direct result of the increased number of Sales Agents, Defendant's sales and distribution grew exponentially, and Defendant reaped (and continues to reap) tremendous revenues.

48.     Before and after execution of the Consulting Agreement, the parties' relationship appeared strong.

49.     Indeed, Defendant has acknowledged to the public that its relationship with Plaintiff, as well as the relationship Plaintiff developed for Defendant with O-AT-KA, was highly important.

50.     For example, in BRC Inc.'s (NYSE: BRCC) 10-K for the fiscal year ending December 31, 2021 filed with the Security and Exchange Commission, it stated that "[w]e depend on a single co-manufacturer, and single key broker relationship, for the development, production, and distribution of our Ready-to-Drink products."

51.     Plaintiff is the "single key broker" referred to in the 10-K filing.

52.     The "co-manufacturer" referred to in the 10-K filing is O-AT-KA Milk Products.

53.     Despite these admissions, and the tremendous success of Defendant's RTD coffee line, Defendant began and continues to take steps to separate its business relationship with Plaintiff, and knowingly and intentionally avoid paying amounts owed to Plaintiff under the Consulting Agreement.

**First Claim for Relief**
**(Breach and/or Anticipatory Breach of Contract)**

54.     Plaintiff repeats and re-alleges the above paragraphs as if fully incorporated herein.

55.     The Consulting Agreement is a valid contract entered into by Plaintiff and Defendant.

56.     Defendant also agreed to pay half of the costs of each additional Sales Agent for a period of 24 months from each respective hire date. In reliance on this agreement, Plaintiff brought on new Sales Agents to sell Defendant's products and grow its distribution network.

57.     Plaintiff has performed all its obligations, covenants, and promises under the Consulting Agreement to date, and is ready, willing, and able to continue to perform its obligations under the Consulting Agreement.

58.     Defendant has breached the Consulting Agreement by failing and refusing to pay Plaintiff its rightfully earned $.02 royalty, pursuant to § 3(B) of the Consulting Agreement, for each unit of product manufactured by any manufacturing facility introduced to Defendant during the initial term of the Consulting Agreement.

59.     More specifically, although Defendant has paid and/or agreed to pay royalties for RTD coffee beverages manufactured by O-AT-KA, DFA (Dairy Farmers of America), and Berner Food & Beverage, LLC, they have failed and/or refused to pay royalties on RTD coffee beverages manufactured by others, including Bev-Hub and Trilliant that they are required to pay pursuant to the Consulting Agreement.

60.     Upon information and belief, royalty payments for Berner are also past due, as Defendant has not paid royalties within thirty (30) days of their receipt of the relevant invoice from Berner, per § 3(B) of the Consulting Agreement.

61.     Defendant also breached and/or anticipatorily breached the agreement to pay their agreed part of the increase in new Sales Agents described above, for the committed period(s).

62.     Defendant has also breached and/or anticipatorily breached the Consulting Agreement by absolutely repudiating their financial obligation to pay additional agreed upon expenses incurred by Plaintiff and its agents.

63.     Defendant has no just or valid excuse for its failure to pay amounts owed under the Consulting Agreement and repudiation of its other contractual obligations.

**64.**     As a direct result of Defendant's breaches and/or anticipatory breach of the Consulting Agreement, Plaintiff has suffered damages and will continue to suffer significant damages.

<u>**Second Claim for Relief**</u>
**(Promissory Estoppel)**

65.     Defendant to pay half of the costs of each additional Sales Agent for a period of 24 months from each respective hire date. In reliance on this agreement, Plaintiff brought on new Sales Agents to sell Defendant's products and grow its sales and distribution network.

66.     Defendant reasonably expected that Plaintiff would rely on the foregoing promise and it was aware that Plaintiff had begun hiring new Sales Agents to service Defendant's account.

67.     Plaintiff relied on Defendant's promise to its detriment. It hired many new Sales Agents expecting that Defendant would pay for at least half of the associated costs for a period of 24 months. Defendant knowingly accepted the benefits of the Sales Agents but refused to pay for them as promised.

68.     Defendant has and will continue to reap significant financial benefits from the additional

sales and distribution network created by the additional Sales Agents.

### Third Claim for Relief
### (Declaratory Judgment Under 28 U.S.C. § 2201)

69.     Plaintiff repeats and re-alleges the above paragraphs as if fully incorporated herein.

70.     Defendant has taken the position that, following the initial term of the Consulting

Agreement, *i.e.* post-termination, Plaintiff is not entitled to <u>any</u> royalties for <u>any</u> products of

Defendant's (including RTD beverages, energy drinks, or energy supplements), regardless of the

manufacturer.  In other words, Defendant claims that post-termination, there is nothing in the

language of the Consulting Agreement, and no enforceable contract between the parties, which

requires Defendant to pay Plaintiff any royalties.

71.     This is Defendant's position despite the fact that the Consulting Agreement clearly states

that "[t]ermination of this Agreement shall be without prejudice to any right which shall have

accrued to either Party hereunder prior to such termination, *including the right for [Plaintiff] to

receive post-termination compensation, commissions or royalties where applicable*."  *See*

Consulting Agreement, **Exhibit A**, § 7(E) (emphasis added).

72.     Conversely, it is Plaintiff's position that Plaintiff is entitled to post-termination royalties

on production of RTD coffee beverages that were developed and manufactured during the initial

term of the Consulting Agreement, by manufacturers introduced to Defendant during the same

period.  Such products and manufacturers include, but are not limited to, all RTD coffee

beverages which Plaintiff is currently receiving a royalty on, and/or currently being

manufactured for Defendant, or will be manufactured during the initial term, and manufactured

by manufacturers including, but not necessarily limited to, O-AT-KA, DFA, Berner Food &

Beverage, LLC, Bev-Hub, and Trilliant.

73.     Further as to royalties, Defendant has taken the position that Plaintiff is currently not entitled to any royalties on the production of RTD coffee beverages by certain manufacturers, including but not necessarily limited to Bev-Hub and Trilliant.  In other words, even though the Consulting Agreement is still in the initial term, and Bev-Hub and Trilliant are currently manufacturing RTD coffee beverages, Defendant claims Plaintiff is not entitled to any royalty on the production of the beverages.

74.     Conversely, it is Plaintiff's position that Plaintiff is entitled to a royalty on the production of RTD coffee beverages by both Bev-Hub and Trilliant.

75.     Further as to royalties, Defendant has taken the position that Plaintiff is not entitled to any royalties on products including energy drinks or energy supplements, which have been or will be developed and manufactured during the initial term of the Consulting Agreement, by manufacturing facilities introduced to Defendant during the initial term of the Consulting Agreement.  Such products include energy drinks and/or energy supplements.

76.     Conversely, Plaintiff has taken the position that Plaintiff remains entitled to royalties on RTD beverages, energy drinks, or energy supplements developed and manufactured during the initial term of the Consulting Agreement by manufacturing facilities introduced to Defendant during the initial term of the Consulting Agreement.

77.     Finally, Plaintiff takes the position that Defendant does not possess intellectual property rights, greater than that or to the exclusion of Plaintiff, in the ingredients, composition and/or formulas for the Ready-to-Drink ("RTD") coffee line of beverages developed through Plaintiff's efforts.

78.    By virtue of the foregoing, there now exists an actual, justiciable controversy between Plaintiff and Defendant relating to their respective legal rights, duties, and obligations, and the controversy is ripe for adjudication pursuant to 28, U.S.C. § 2201.

79.    Declaratory relief will settle the legal issues between the parties as set forth above, and finalize the controversies described.

80.    Plaintiff therefore requests a judgment declaring the rights and obligations of the parties, including a declaration that:

    a.    Plaintiff is entitled to post-termination royalties on production of RTD coffee beverages that were developed and manufactured during the initial term of the Consulting Agreement, by manufacturers introduced to Defendant during the same period.  Such products and manufacturers include, but are not limited to, all RTD coffee beverages which Plaintiff is currently receiving a royalty on, and/or currently being manufactured for Defendant, or will be manufactured during the initial term, and manufactured by manufacturers including, but not necessarily limited to, O-AT-KA, DFA, Berner Food & Beverage, LLC, Bev-Hub, and Trilliant.

    b.    Plaintiff is currently entitled to a royalty on the production of RTD coffee beverages by both Bev-Hub and Trilliant.

    c.    Plaintiff is entitled to royalties on RTD beverages, energy drinks, or energy supplements developed and manufactured during the initial term of the Consulting Agreement by manufacturing facilities introduced to Defendant during the initial term of the Consulting Agreement.

d. Defendant does not possess intellectual property rights, greater than that or to the exclusion of Plaintiff, in the ingredients, composition and/or formulas for the Ready-to-Drink ("RTD") coffee line of beverages developed through Plaintiff's efforts.

**Fourth Claim for Relief**

**(Attorney's Fees)**

81. Plaintiff repeats and re-alleges the above paragraphs as if fully incorporated herein.

82. Pursuant to Texas Civil Practice & Remedies Code § 38.001, SEI is entitled to and hereby requests judgment for the reasonable and necessary attorney's fees, expenses, and costs that are incurred in prosecuting this Action and for any appeal.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests the following relief:

A. Enter judgment in favor of Plaintiff on the First Claim for Relief;

B. A declaration that:

a. Plaintiff is entitled to post-termination royalties on production of RTD coffee beverages that were developed and manufactured during the initial term of the Consulting Agreement, by manufacturers introduced to Defendant during the same period. Such products and manufacturers include, but are not limited to, all RTD coffee beverages which Plaintiff is currently receiving a royalty on, and/or currently being manufactured for Defendant, or will be manufactured during the initial term, and manufactured by manufacturers including, but not necessarily limited to, O-AT-KA, DFA, Berner Food & Beverage, LLC, Bev-Hub, and Trilliant.

b.  Plaintiff is currently entitled to a royalty on the production of RTD coffee beverages by both Bev-Hub and Trilliant.

c.  Plaintiff is entitled to royalties on RTD beverages, energy drinks, or energy supplements developed and manufactured during the initial term of the Consulting Agreement by manufacturing facilities introduced to Defendant during the initial term of the Consulting Agreement.

d.  Defendant does not possess intellectual property rights, greater than that or to the exclusion of Plaintiff, in the ingredients, composition and/or formulas for the Ready-to-Drink ("RTD") coffee line of beverages developed through Plaintiff's efforts.

C.  Monetary damages to the extent available under the Consulting Agreement and applicable law, the amount of which to be determined at trial;

D.  Monetary damages to compensate it for Defendant's unpaid portion of costs associated with new Sales Agents, the amount of which to be determined at trial;

E.  An award of its attorney's fees;

F.  An award of interest and costs to the fullest extent allowable by applicable law and court rule, including but not limited to pre-complaint, pre-judgment, and post-judgment interest; and

G.  Whatever further legal or equitable relief appears appropriate at the time of final judgment.

**<u>Demand for Jury Trial</u>**

Pursuant to Fed. R. Civ. P. 38, and to the extent permitted by law, Plaintiff hereby demands a trial by jury of all issues triable by jury in this action.

Respectfully submitted:

By: /s/ William Zac Duffy
William Zac Duffy
Texas State Bar No. 24059697
zduffy@munsch.com

**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

Zachary B. Mack (MI Bar #P62742)
Appearance Pending Admission
Salvatore Prescott Porter & Porter, PLLC
105 East Main Street
Northville, Michigan 48167
Tele: (248) 679-8711
Email: mack@sppplaw.com

**ATTORNEYS FOR PLAINTIFF
STRATEGY AND EXECUTION, INC.**