## CONSULTING AGREEMENT

This Consulting Agreement ("Agreement") is entered into effective January 1, 2020, by and between Strategy and Execution, Inc., a Michigan corporation (hereinafter "Consultant"), whose headquarters is located at 7985 Washington Woods, Dayton, OH 45459, and Black Rifle Coffee Company LLC, a Delaware limited liability company (hereinafter "Principal" or "the Company"), whose headquarters is located at 355 Spencer Lane, San Antonio, Tx 78255, collectively referred to as the "Parties".

1. **Recitals**

    A) Principal is a roaster/manufacturer of various premium coffee blends, and also offers associated brand merchandise. Principal's coffee products are currently manufactured in-house, and products are sold direct to consumer via on-line ordering, B2B and retail coffee shop outlets.

    B) Principal wishes to expand its business operations and take advantage of its brand recognition, including by adding new product categories, and establishing a retail presence for the sale of all of its branded products.

    C) Consultant has experience and expertise in various facets of the beverage industry, including the development and sale of ready to drink (RTD) beverages, energy drinks, and energy supplements. Consultant's experience also includes expertise in the general retail industry, including sales, marketing, and manufacturing advice and support.

    D) Consultant is in a position to advise and assist Principal in developing and expanding its business operations, including but not limited to creation of new product categories and establishing distribution and retail sales opportunities.

    E) Based upon the foregoing, the Parties wish to enter into this Consulting Agreement, the material terms and conditions of which are set forth below.

2. **Initial Term, Appointment, and Expenses**

    A) Consultant is hereby engaged for an initial period of forty-eight (48) months, beginning January 1, 2020. Termination during this initial period may only be through mutual written agreement, or as specifically set forth herein for cause. Following the initial term, this Agreement is renewable upon agreement of both parties for a option of twelve (12) month periods, unless terminated in advance of the initial renewal period, or during the successive term, by ninety (90) day written notice by either Party.

    B) During the initial period, Consultant's role will include, but not necessarily be limited to:

- Provide guidance and support in general product research and development, manufacturing, creation of consumer demand, and product sales and distribution.
- Advise Principal in establishing an overall retail sales and marketing approach, including working with existing and future in-house sales and marketing teams.
- Liaise with third-party manufacturers regarding production and inventory control.
- Help Principal establish retail accounting practices, by advising on retail/wholesale pricing and accounting procedures.
- Establish contact and obtaining initial customer or account appointments for the sales and distribution of Principal's products.
- Procuring and helping to manage outside sales representatives.
- Conduct forecasting for all and future distributors
- Provide monthly inventory levels, yields, packaging, etc.
-

C) The Parties expressly understand and agree that Consultant is an independent contractor in the performance of each and every part of this Agreement. Accordingly, and except as expressly provided herein, Principal shall have no right to exercise any control over the day-to-day activities and operations of Consultant.

D) Principal understands and acknowledges that Consultant's expertise comes from relationships with similar manufacturers and principals in the marketplace, and therefore acknowledges and agrees that Principal is but one of several clients of Consultant's in potentially the same or similar market. Upon reasonable request, Consultant will inform Principal of all other clients of Consultant which sell substantially similar products in the same market.

E) Although Consultant will put forth its best efforts to perform the services called for in this Agreement, this Agreement does not contemplate any specific time allocation or commitment on Consultant's behalf.

F) It is contemplated that Consultant's out-of-pocket expenses incurred in the performance of this Agreement will be larger than similar type arrangements. Therefore, and beginning January 1, 2020, Principal shall provide for a set, monthly expense fee (in addition to the consulting fee set forth in paragraph 3 below) of $3,500. As the relationship develops, the Parties agree to revisit and adjust expense reimbursement based upon a standard expense-report method, including payment of travel; communication; office supplies and administrative support, etc. Larger, one-time expenses shall always be agreed to in advance, in writing, before they are incurred.

G) Consultant shall assume full responsibilities for the proper reporting and payment of all federal, state and local taxes, contributions and/or special levies imposed or required under social security, income tax (state and federal), and/or other laws and regulations, with respect to the performance by Consultant under this Agreement.



3. <u>**Fees, Commissions, Royalties, Other Consideration**</u>

    A)    In exchange for Consultant's services, Consultant shall be paid a monthly consulting fee of $30,000 beginning January 1, 2020. The fee shall be paid on or before the 15th of the month for which the consulting fee applies.

    B)    In addition to the monthly consulting fee, and specific to any RTD beverages, energy drinks, or energy supplements developed and manufactured during the initial term of this Agreement, Principal shall pay Consultant a royalty of $.02 for each unit of product manufactured by any manufacturing facility introduced to Principal during the initial term of this Agreement, or through Consultant's direct efforts thereafter. The royalty shall be paid to Consultant within thirty (30) days of receipt of the manufacturer's invoice by Principal.

    C)    In addition to the monthly consulting fee, and specific to any RTD beverages, energy drinks, or energy supplements developed and manufactured during the initial term of this Agreement, Principal shall pay Consultant a royalty of $.02 for each unit of product manufactured by or sold through any third party pursuant to any licensing or private label agreement.

    D)    To the extent Consultant procures the sale of any other existing product of Principal's aside from RTD beverages, energy drinks, or energy supplements, *e.g.* coffee pods, whole bean coffee, coffee blends, merchandise, etc., Principal shall pay Consultant a commission of 3% of the products sold. Said commissions shall be earned on the invoiced price of the products shipped and paid for by the accounts or customers (or distributors associated therewith) procured by Consultant, less taxes and shipment costs. Commissions shall be paid by Principal to the Consultant by the 15th of the month following the month during which payment of the invoices for the products was received by Principal.

    E)    The Parties recognize that Consultant's efforts in creating and developing new markets and distribution for Principal could result in investment interest in Principal's company and product lines, including a purchase of all or substantially all of Principal's assets, or the sale of a controlling interest in the Company. In recognition of the good will and additional market presence to be created through Consultant's efforts, and to avoid any loss of compensation to Consultant through such a transaction, the Parties agree to the following:

        i)    Should a third party or entity purchase all or substantially all of the Principal's assets, or take a controlling interest in the Company, Principal agrees to condition such a transaction on the extension of this Agreement for an additional Thirty Six (36) months from the date of closing of the transaction.



ii) If the transaction contemplated in part i) is not conditioned on the extension of this Agreement, then Principal agrees to pay out the remaining contract term in full and compensate Consultant an additional one-time fee equal to the following:

   a. If the transaction is closed within the first forty-eight (48) months of this Agreement, the fee shall equal two times (2X) of the gross revenue minus, taxes, shipping, and chargebacks of the Company received from the sale of products developed during the term of this Agreement, during the preceding rolling twelve (12) months of the transaction.

   b. If the transaction is closed following the first forty-eight (48) months of this Agreement, the fee shall equal one hundred percent (100%) of the gross revenue minus, taxes, shipping, and chargebacks the Company received from the sale of products developed during the term of this Agreement, during the preceding rolling twelve (12) months of the transaction.

Payment of the fee set forth above shall be made within ninety (90) days of the closing of the transaction.

4. **Covenant Not to Solicit**

A) During the initial term of this Agreement, and for a period of one (1) year after its termination for any reason, both parties agree not to solicit any employee or agent of the other party to leave the employ or contractual relationship with the non-soliciting party, in order to become employed or contracted with the soliciting party.

5. **Confidentiality**

A) Consultant will make its best efforts to see that all confidential aspects of Principal's business and products are protected and kept confidential, such as information regarding trademark, patent, marketing or manufacturing, which may be supplied to Consultant by Principal, and which is so described as "confidential". Consultant's obligations under this paragraph shall survive termination of this Agreement.

6. **Indemnity**

A) Principal agrees to indemnify, hold harmless and defend Consultant, its officers, directors, shareholders, employees, or agents, from and against any and all claims and demands of whatever nature, regardless of the merit thereof, which may be asserted against Consultant in connection with the sale and use of Principal's products, or products manufactured or sold by Principal, including for damage or injuries to persons or property, whether or not such damage or injuries are caused in part by the negligence of Consultant.

4



7. **Termination of Agreement and Post Termination Commissions**

    A) During the initial period of forty-eight (48) months, this Agreement may only be terminated by Principal for cause, being: A) an intentional act of fraud, embezzlement, theft or other material violation of law which occurs during Consultant's performance of its obligations under this Agreement; B) the intentional disclosure of confidential information of the Principal's by Consultant; C) willful conduct by the Consultant for the purpose of causing injury to the Principal; D) the willful and continued failure to substantially perform the services called for by Consultant under this Agreement; or E) any material breach of this Agreement which goes uncured by Consultant for a period of fifteen (15) business days following receipt of written notice of the alleged breach from Principal.

    B) During the initial period of forty-eight (48) months, Consultant may only terminate this Agreement for cause, including a material breach of this Agreement by Principal which goes uncured by Principal for a period of fifteen (15) business days following receipt or written notice of the alleged breach from Consultant.

    C) Following the initial period of forty-eight (48) months, both Consultant and Principal may terminate this Agreement upon ninety (90) day notice.

    D) In the event of termination, Consultant shall use its best effort to return all documents, materials, and tangible property supplied by Principal to Consultant, and maintain confidential any information received from Principal which cannot be returned.

    E) Termination of this Agreement shall be without prejudice to any right which shall have accrued to either Party hereunder prior to such termination, including the right for Consultant to receive post-termination compensation, commissions or royalties where applicable.

8. **Non-Waiver**

    A) Failure or refusal by either Party to insist upon the strict performance of any provision of this Agreement or to exercise any right in any one or more instances or circumstances shall not be construed as a waiver or relinquishing of such provision or right.

9. **Counterparts**

    A) This Agreement may be executed in one or more counterparts, each of which will be deemed an original Agreement, but all of which will be considered one instrument and will become a binding agreement when one or more counterparts have been signed by each of the Parties and delivered to the other.

## 10. Assignments, Applicable Parties, and Intent to Compensate Representative

A) Consultant may not assign its performance obligations under this Agreement without the express written consent of Principal. Principal may assign its rights and responsibilities under this Agreement with advance notice to Consultant, so long as the assignment will not result in a breach of this Agreement by Principal – it being understood by the Parties that any assignment by Principal shall not be intended to or operate as a release of Principal's obligations under this Agreement without proper consideration to Consultant.

## 11. Amendments

A) The terms of this Agreement may not be varied or modified in any manner, except in a subsequent writing executed by an authorized representative of both Parties.

## 12. Notice

A) Any notice herein provided for shall be deemed to have been duly given if the same is either delivered in person or sent by certified mail, return receipt requested, to the location in the introductory paragraph above, or, if subsequently changed by notice in writing, to the new location specified in accordance with this paragraph.

## 13. Choice of Law, Venue, Interpretation, and Attorney Fees and Costs

A) This Agreement will be governed and controlled in all respects by the laws of the State of Texas, including interpretation, enforceability, validity, and construction. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the provisions shall remain in full force and effect and shall not be affected, impaired or invalidated in any way.

B) The Parties hereby consent to the exclusive jurisdiction of the state or federal courts located in Texas for purposes of any action, suit, proceeding or claim arising out of or related to this Agreement and waive any objection or challenge to venue being in Michigan.

C) This Agreement and its terms were arrived at through negotiation between the Parties and should not be construed against either as the drafter. In the event legal action is necessary to enforce the terms of this Agreement, the prevailing party in any such action shall be entitled to recover reasonable attorney fees and costs incurred.

## 14. Integration



A) This Agreement constitutes the entire understanding between the Parties with respect to the subject matter of this Agreement and supercedes all prior discussions, negotiations, agreements and understandings.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement to be effective the day and year written above:

(SIGNATURES TO IMMEDIATELY FOLLOW ON NEXT PAGE)

**Black Rifle Coffee Company, LLC**                **Strategy and Execution, Inc.**

By: _____                         By: _____
    (Signature)                                         (Signature)

    Scott Henny                                         Barton M. Evans
    (Print name)                                        (Print name)

    CEO                                                 CEO
    (Title)                                             (Title)

