IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| STRATEGY & EXECUTION, INC., | § |
|        *Plaintiff*, | § |
| v. | §    CIVIL ACTION NO. 5:23-cv-00135 |
| BLACK RIFLE COFFEE COMPANY, LLC, | § |
|        *Defendant*. | § |

### DECLARATION OF G. KARL FANTER

I, G. Karl Fanter, a lawyer licensed to practice law in the State of Ohio, and admitted *pro hac vice* to the United States District Court for the Western District of Texas, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am over the age of 18 years old and am competent to provide testimony in the above-captioned matter.

2. I am counsel of record for Black Rifle Coffee Company, LLC ("Black Rifle"), and I am personally familiar with the facts set forth in this declaration.

3. Attached as Exhibit A is a true and correct copy of the Baker & Hostetler LLP invoices regarding the attorneys' fees incurred by Black Rifle in connection with this matter between April 1, 2025 and October 31, 2025. In my capacity as a Partner with Baker Hostetler, I am generally familiar with the manner in which those records are created and maintained. Apart from the redacted attorney-client-privilege information, Exhibit A is a copy of the original business records of Baker Hostetler. These records were made by, or from information transmitted by, persons with knowledge of the matters set forth. The records were kept in the course of regularly

1

conducted business activity of Baker Hostetler, and it was the regular practice of the business activity of Baker Hostetler to make the records. As a matter of course, Baker Hostetler maintains its invoices as confidential. These invoices contain detailed information regarding the amount of time spent on a particular task and the rate charged for that task, including a narrative description of the work performed. This information provides others with insight regarding Baker Hostetler's and Black Rifle's strategy in litigating and could be used to their disadvantage in other proceedings.

4. On March 31, 2025, the Court entered Judgment consistent with the Court's Order Granting Black Rifle's Partial Motion to Dismiss and Order denying SEI's Motions for Reconsideration and for Leave to File First Amended Complaint. (Dkt. 48.)

5. On April 9, 2025, SEI filed its Notice of Appeal from the Judgment. (Dkt. 49.)

6. Black Rifle filed its Motion for Attorney Fees on April 14, 2025. (Dkt. 52.)

7. On June 27, 2025, SEI filed its Appellant Brief in the Fifth Circuit. Black Rifle filed its Appellee Brief on August 27, 2025. And SEI filed its Reply Brief on October 1, 2025.

8. On October 23, 2025, the Fifth Circuit affirmed the Court's dismissal in a per curiam decision. A copy of the decision is attached as Exhibit B.

9. Since April 1, 2025, as shown in Exhibit A, Black Rifle has incurred $165,920.78 in fees defending itself in this matter.

10. I have reviewed the invoices attached as Exhibit A. I am familiar with and have reviewed the fees incurred and billed by Baker Hostetler in this matter, as well as the standard billing rates for each Baker Hostetler attorney representing Black Rifle in this matter.

11. For all of the fees shown on Exhibit A, Baker & Hostetler, LLP charged its standard hourly rate.

12. Based upon my twenty years' experience as a litigator of commercial disputes and as supervising partner on this matter and many others requiring similar services, I believe that the fees charged by Baker Hostetler to Black Rifle are reasonable and customary, and were necessary and appropriate to successfully litigate this matter. The time expended was reasonable and necessary to achieve the results obtained, especially given the amount at issue and the extensive briefing undertaken in this matter. Throughout the course of its representation of Black Rifle, Baker Hostetler has taken significant efforts to ensure that it has only billed and requested attorney's fees in this matter that are fair and reasonable.

13. Since April 1, 2025, counsel for Black Rifle has successfully engaged in extensive briefing in the Fifth Circuit.

14. Additionally, counsel for Black Rifle prepared for and participated in numerous conferences with the Fifth Circuit's mediation office to engage in potential settlement discussions.

15. Black Rifle's counsel also prepared for and attended in-person settlement discussions.

16. Throughout these proceedings, Baker & Hostetler undertook significant efforts to ensure that lawyers with less experience, and thus lower hourly rates, handled appropriate tasks and that attorneys with higher rates focused on higher level strategy matters. Baker & Hostetler also took efforts to ensure that no duplicative work was done. During this time period, this matter was staffed primarily with one partner and one associate.

17. In total, Black Rifle has incurred $619,650.78 in fees defending itself in this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Date: November 7, 2025

_____
G. Karl Fanter

# Exhibit A

*Filed Under Seal*

# Exhibit B

# United States Court of Appeals
# for the Fifth Circuit

---

No. 25-50284
Summary Calendar

---

United States Court of Appeals
Fifth Circuit
**FILED**
October 23, 2025
Lyle W. Cayce
Clerk

Strategy and Execution, Incorporated,

*Plaintiff—Appellant,*

*versus*

Black Rifle Coffee Company, L.L.C.,

*Defendant—Appellee.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CV-135

---

Before Davis, Wilson, and Douglas, *Circuit Judges.*

Per Curiam:[*]

Plaintiff-Appellant Strategy and Execution, Inc. (SEI) sued Defendant-Appellee Black Rifle Coffee Company, L.L.C. (Black Rifle) for breach of a Consulting Agreement, claiming it is owed royalties for products manufactured after the Agreement's termination. The district court granted Black Rifle's motion to dismiss. We AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-50284

SEI "is a consumer product goods consultant." Black Rifle "is a roaster/manufacturer of various premium coffee blends." On January 1, 2020, the two entered a Consulting Agreement with a four-year term—called the "initial term" or "initial period"—during which the parties could terminate only for cause. Once that initial term ended on January 1, 2024, the parties could continue their relationship and terminate the Agreement upon 90 days' notice.

In the initial term, SEI was to handle broad aspects of Black Rifle's business. In exchange, Black Rifle agreed to pay SEI $30,000/month, as well as royalties on certain products. The royalty provision reads:

> In addition to the monthly consulting fee, and specific to any RTD [Ready to Drink] beverages, energy drinks, or energy supplements **developed and manufactured during the initial term of this Agreement**, [Black Rifle] shall pay [SEI] a royalty of $.02 for each unit of product manufactured by any manufacturing facility introduced to [Black Rifle] during the initial term of this Agreement, or through [SEI's] direct efforts thereafter. The royalty shall be paid to [SEI] within thirty (30) days of receipt of the manufacturer's invoice by [Black Rifle].[1]

The Agreement's termination clause states termination "shall be without prejudice to any right which shall have accrued to either Party hereunder prior to such termination, including the right for [SEI] to receive post-termination compensation, commissions or royalties where applicable." Its integration clause says the "Agreement constitutes the entire understanding between the Parties . . . and supercedes [sic] all prior discussions, negotiations, agreements and understandings."

---

[1] Emphasis added.

SEI sued Black Rifle in February 2023 during the Agreement's initial term. The complaint alleges past and anticipatory breach of contract and seeks, among other things, a declaration of SEI's entitlement to royalties on products manufactured after the Agreement's termination on January 1, 2024.[2] Black Rifle moved to dismiss this latter claim for "perpetual" royalties. SEI opposed the motion and sought leave to amend if the district court found either the complaint's allegations insufficient or the Agreement ambiguous.

The district court, however, found the Agreement was not ambiguous and that SEI was not entitled to royalties on products manufactured after the Agreement's termination. The court also denied SEI leave to amend due to futility. SEI sought reconsideration and proffered an amended complaint containing allegations about the parties' pre-Agreement negotiations and understandings. The district court denied the motion and entered judgment for Black Rifle after the parties settled the remainder of SEI's claims. SEI timely appealed, and lists three questions for review—(1) whether the Agreement entitles it to post-termination royalties, (2) if so, what post-termination royalties are owed, and (3) whether the district court should have granted SEI leave to amend. Our review is de novo.[3] We apply Texas law, as the Agreement requires.

But first, we address two preliminary matters. SEI argues the district court erred by deciding the merits at the motion-to-dismiss stage instead of

---

[2] The complaint also asserts a claim based on promissory estoppel, which was dismissed and is not the subject of this appeal.

[3] *See Williams v. Integon Nat'l Ins. Co.*, 132 F.4th 801, 805 (5th Cir. 2025) (stating standard of review for grant of motion to dismiss); *Terry Black's Barbecue v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) ("[W]hen the denial of leave to amend is based on futility, as is the case here, our review is de novo.").

crediting SEI's allegation that Black Rifle had breached (or was about to breach) the Agreement. The Agreement was attached to the complaint, though, and thus became part of the pleadings. As a result, the district court was not bound to accept SEI's allegations to the extent they contradicted the Agreement's plain terms.[4] Next, Black Rifle argues that SEI inadequately briefed, and therefore forfeited, the first question presented—whether the Agreement grants SEI a right to post-termination royalties.[5] We agree that SEI dedicated most of its principal brief to its second question and the corresponding meaning of the phrase, "$.02 for each unit of product manufactured by any manufacturing facility **introduced to** [Black Rifle] during the initial term of this Agreement."[6] In reply, however, SEI identifies seven sentences from its principal brief addressing the first question. With that, we've carefully considered the merits of each question that SEI presented for review.

Turning to the substance, Black Rifle references the first part of the royalty provision, which identifies the products on which a royalty is earned, and argues its plain language does not provide for royalties on products manufactured after the Agreement's initial term. In Black Rifle's view, a "product must actually roll off the manufacturing line before January 1, 2024" to be subject to a royalty. We agree. Indeed, we see no other way to read the royalty clause, which grants SEI a royalty on certain products "developed **and manufactured during the initial term of**"[7] the Agreement,

---

[4] *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

[5] *See Rollins v. Home Depot USA*, 8 F.4th 393, 397, 397 n.1 (5th Cir. 2021) (describing ways "a party can fail to adequately brief an argument").

[6] Emphasis added.

[7] Emphasis added.

and SEI offers no alternative.[8] If the parties had intended for royalties to be paid on products manufactured after January 1, 2024, the royalty provision would have said so.[9]

SEI, however, argues the termination provision's reference to "post-termination" royalties grants it a right to royalties on products manufactured after the Agreement's expiration. But that provision does not create an independent entitlement to royalties; rather, the phrase "post-termination compensation, commissions or royalties where applicable" serves as an example of the various rights that could accrue to either party during the Agreement's initial term. Read correctly, the language about "post-termination . . . royalties where applicable" contemplates a scenario where a product might be "developed and manufactured" before January 1, 2024, but the manufacturer's invoicing—which triggers Black Rifle's obligation to pay royalties—does not reach Black Rifle until after January 1, 2024.

As noted above, SEI devoted most of its principal brief to its second question presented (calculation of post-termination royalties), rather than to its first (entitlement to post-termination royalties). Because we resolve the first question against SEI, we need not reach the second: no amount of royalties can be owed absent an underlying entitlement to post-termination royalties.

SEI's third issue contends the district court erred by denying SEI leave to amend. But where, as here, a contract is unambiguous, Texas law forbids consideration of the sort of extrinsic evidence SEI proposed adding

---

[8] *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) ("Our primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as that intent is expressed in the contract.").

[9] *See Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 709 (Tex. 2021) ("The interpretation of an unambiguous contract is a question of law for the court.").

to its complaint.[10] Even if that weren't the law, the Agreement's integration clause would preclude it. The district court's Judgment is AFFIRMED.

_____

[10] *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 749 (Tex. 2020).